IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

MELISSA RANSPOT,

          Plaintiff,

v.                                       No. CIV 11-778 BB/LFG

TAOS LIVING CENTER AND DAN
DAIGLE and PAUL REID, both
individually and on behalf of Defendant
Taos Living Center,

          Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court for consideration of a motion to remand filed by Plaintiff (Doc. 7), a motion to dismiss filed by Defendant Paul Reid (Doc. 21), and a motion by Defendants requesting permission to file a supplemental response to the remand motion (Doc. 37). The Court has reviewed the submissions of the parties and the relevant law. Based on this review, Court will grant the motion to remand, deny as unnecessary the motion to file a supplemental response, and decline to decide the motion to dismiss as the Court is without jurisdiction to rule on it.

**Procedural History**

Plaintiff was employed by Defendant Taos Living Center ("TLC") until her employment was terminated in April 2010. Plaintiff thereafter filed a charge of discrimination with the Human Rights Bureau of the New Mexico Department of Workforce Solutions. [Doc. 43, Exh. 1, p. 4] Subsequently, Plaintiff filed suit in state court, raising only state-law claims, against Defendants TLC, Dan Daigle ("Daigle"), and Paul Reid ("Reid"). On August 31, 2011, Defendants removed the lawsuit to this Court, on the basis of diversity of citizenship. Plaintiff filed a timely motion to remand in late September 2011, and the parties then apparently entered

into settlement negotiations.  As a result of these negotiations and resulting extensions of briefing deadlines, the motion to remand did not become fully briefed and ready for decision until late April, 2012.  In the meantime, Defendant Reid filed his motion to dismiss and Defendants filed their request to submit a supplemental response.

### Issue Presented

Plaintiff is a citizen of New Mexico.  TLC is a limited liability company owned by entities and, ultimately, individuals who are not residents or citizens of New Mexico.  Daigle is a citizen of Louisiana.  Finally, Reid is a citizen of New Mexico.  At first blush, the fact that Reid and Plaintiff are both citizens of New Mexico would seem to preclude the exercise of diversity jurisdiction, as complete diversity between the plaintiff and all defendants is required to support such exercise.  *See Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.,* 651 F.3d 1219, 1223 (10th Cir. 2011).  However, Defendants maintain this is not the case here because Reid was improperly joined as a defendant, and therefore his citizenship should be ignored when analyzing the diversity of the parties.  The term of art for this type of argument is fraudulent joinder; the dispositive question before the Court is whether Reid is a proper Defendant whose presence in this lawsuit destroys diversity.  If so, the case must be remanded.

### Fraudulent Joinder Standard

Defendants claiming that fraudulent joinder has occurred bear the burden of establishing that fact.  This burden is a heavy one.  *See, e.g., Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 764 (7th Cir. 2009); *Montano v. Allstate Indemnity*, 2000 WL 525592 (10th Cir. unpublished).  If there is any reasonable possibility the plaintiff could prevail on any claim against the non-diverse defendant, the joinder is not fraudulent and the case must be remanded. *See Schur; Montano.*[1]  In examining the fraudulent-joinder issue, the Court is not limited to the

---

[1]Many courts state the standard not as a "reasonable possibility" but as "any possibility," declaring that remand is required if there is any possibility the plaintiff could prevail against the non-diverse defendant under the facts of the case.  *See, e.g.,  Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir.2007).  Having reviewed a number of cases, the Court finds no meaningful differences in the application of the two standards, merely a difference in

pleadings filed by the parties but may pierce those pleadings and consider the entire record of the case as well as any evidence the parties may choose to submit. *See Smoot v. Chicago, R.I. & P.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967); *see also Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (relying on affidavits to determine fraudulent-joinder issue, and discussing similarity to summary-judgment process).

It must be noted that the "reasonable possibility" standard is not the same as the failure-to-state-a-claim standard that is applicable under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Archuleta v. Taos Living Center, supra*, 791 F.Supp.2d at 1075-76. Instead, the Court must look at the facts present in the case, not simply those alleged in the complaint, and determine whether there is a reasonable possibility that those facts, construed in the light most favorable to the plaintiff, could result in a viable claim against the non-diverse defendant. This standard is more deferential to the plaintiff's alleged claim than is the Rule 12(b)(6) standard. *See Schur, supra*, 577 F.3d at 764 (citing several cases stating that burden for plaintiff is even more favorable than the motion-to-dismiss standard applied under Rule 12(b)(6)); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992).[2]  Under this standard, it is entirely possible a case should be remanded even though the claims brought against the non-diverse defendant will ultimately be subject to dismissal. *See Spataro v. Depuy Orthopaedics, Inc.*, 2009 WL 382617 (D. N.M. unpublished) (where federal court would have to decide issue of first impression under state law to decide whether plaintiff's claim against non-diverse defendant was viable, court remanded case despite

---

phraseology, and the Court believes the slightly more conservative "reasonable possibility" standard more accurately reflects the analysis applied in the cases. *See also Archuleta v. Taos Living Center, LLC*, 791 F.Supp.2d 1066, 1074 (D.N.M. 2011) (analyzing cases and stating standard in similar fashion – remand is required if any one of the claims against the non-diverse defendant is possibly viable).

[2]The Tenth Circuit appears to be in accord with this position, although it has not said so in a published opinion. *See Montano, supra* (citing *Batoff* and stating the reasonable-possibility standard "is more exacting than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6)").

possibility that plaintiff's strict-liability claim might be rejected by the state courts); *see also Reeser v. NGK Metals Corp.*, 247 F.Supp.2d 626, 629 (E.D. Pa. 2003) (fact that claim against party may ultimately be dismissed does not necessarily mean the party was fraudulently joined); *cf. Crowe v. Coleman*, 113 F.3d 1536, 1541 (11th Cir. 1997) (plaintiff need not show he could defeat summary judgment to gain remand).  Furthermore, even if the complaint as it stands fails to state a viable claim against the non-diverse defendant, the Court must consider the possibility that, with amendment, such a claim could be stated.  *See Archuleta, supra*, 791 F.Supp.2d at 1076 (a claim is "possibly viable" if, with amendment, it could state a cause of action).  Significantly, a claim that is subject to dismissal "only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Archuleta,* 791 F.Supp.2d at 1072 (quoting *Batoff, supra*, 977 F.2d at 853).

**Application of Standard**

The complaint attempts to state the following state-law claims against Reid:  (1) discrimination based on spousal affiliation, in violation of the New Mexico Human Rights Act; (2) wrongful termination in violation of public policy; (3) bad-faith breach of contract; (4) intentional infliction of emotional distress; (5) negligence; and (6) intentional interference with an employment contract.  As noted above, if there is a reasonable possibility that Plaintiff could prevail on only one of these claims, fraudulent joinder has not occurred and this case must be remanded to state court.  After reviewing the claims stated in the complaint and the additional materials submitted by the parties during briefing of all the motions filed in this case, the Court finds there is a reasonable possibility Plaintiff could prevail against Reid on her Human Rights Act ("HRA") claim.  This does not mean the Court believes this claim actually is viable or could survive a motion to dismiss or for summary judgment.  However, as discussed below, analysis of the claim will require an "intricate analysis of state law" as to at least two legal issues, and the claim therefore must not be disregarded for diversity-jurisdiction purposes.  *See Archuleta; Batoff*.

4

Put simply, Plaintiff has alleged that she was fired from her job because her husband became embroiled in a legal dispute with her employer, TLC.  After her husband was accused of embezzling money from TLC, Plaintiff claims, Reid became hostile toward her and encouraged Daigle to terminate her employment.  According to Plaintiff, therefore, she was unlawfully fired not because she herself did anything wrong, but simply because she was married to a particular person.  She relies on an HRA provision stating, among other prohibitions, that it is unlawful to discriminate against any person because of that person's "spousal affiliation."  NMSA § 28-1-7(A).

Faced with this cause of action, Defendant Reid originally argued in his motion to dismiss that the HRA does not allow discrimination claims to be brought against individuals but only against employers.  Reid wisely abandoned this argument after Plaintiff pointed out that the New Mexico Supreme Court has several times held that such claims against individual defendants are authorized by the HRA.  *See, e.g., Lobato v. State Env. Dep't*, 267 P.3d 65, 68 (N.M. 2011); *Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001).  At this time, therefore, Reid has two remaining arguments as to why the HRA cause of action is not viable and cannot support remand.  First, Reid maintains the "spousal affiliation" protection does not apply to situations like Plaintiff's; alternatively, Reid argues that even if it does, Plaintiff did not exhaust her administrative remedies *vis a vis* Reid and accordingly cannot prosecute the HRA claim against him individually.

Reid's first argument is premised on the proposition that when the New Mexico Legislature used the term "spousal affiliation" the term was not meant to apply in a narrow sense to the individual to whom the employee is married.  Instead, Reid contends, the Legislature must have meant to protect against discrimination against single people in general, or married people in general.  Reid would thus construe the spousal-affiliation phrase to apply mainly to an employee's marital status in the broad sense.  Reid points out that the HRA, like federal anti-discrimination statutes, generally protects membership in a certain demographic category -- it prohibits discrimination on the basis of, for example, a person's gender, religion, or race.  It

would not be consistent with these broad purposes, argues Reid, to construe the spousal-affiliation term to protect a person's marriage to a specific person. Reid notes it might be different if a person was discriminated against because he or she was married to an individual who was a member of one of the other categories mentioned in the HRA; that is, if an Anglo man was fired because he married a Hispanic woman he might have a claim under the spousal-affiliation provision.

To the Court's knowledge, only one New Mexico case has mentioned the spousal-affiliation provision of the HRA. In *Maloof v. Prieskorn*, 101 P.3d 327, 332 (N.M.App. 2004), the New Mexico Court of Appeals stated without analysis that the HRA would prevent a mobile-home park owner from discriminating against unmarried cohabiting couples wishing to rent premises in the park. This case obviously fits into Reid's theory concerning the limitation of the spousal-affiliation provision to broad marital-status concerns. However, nothing in *Maloof* purports to discuss the scope of the spousal-affiliation provision. Reid's discussion of the policy considerations behind the HRA has a certain logical appeal. On the other hand, the plain language of the provision does not readily call to mind an individual's general marital status. A person's "spousal affiliation" can just as easily be construed to refer to the person's decision to affiliate with a particular spouse. To resolve this issue would require the Court to delve into an "intricate analysis of state law" to determine the Legislature's intent in enacting the provision. It may be that the Legislature did not intend to prohibit an employer from firing an employee due to a dispute the employer is having with the employee's spouse. At this point, however, the Court cannot say so with any certainty. Therefore, the Court holds it is reasonably possible that Plaintiff's interpretation of the spousal-affiliation provision is correct.

As a back-up argument, Defendant Reid maintains Plaintiff did not exhaust her administrative remedies against him as an individual. Reid points out that the charge-of-discrimination form submitted by Plaintiff does not mention his name, but identifies only the TLC as the discriminating employer. [Doc. 43, Exh. 1, p. 4] Plaintiff admits this is true, but relies on a recent New Mexico Supreme Court case which held the Human Rights Bureau's claim

form is inadequate in individual-liability cases because it does not ask the complainant to identify any individual who might have been involved in the alleged discriminatory conduct. *See Lobato v. State Env. Dep't*, *supra*, 267 P.3d at 68.  In *Lobato* the administrative-exhaustion requirement was waived for the plaintiff's claim against individual defendants, due to the inadequacy of the claim form. *See id.* at 69.  Plaintiff contends a similar result should obtain in this case.

In response to Plaintiff's *Lobato*-based argument, Reid attempts to distinguish *Lobato* from this case.  Reid contends that in *Lobato* the Supreme Court noted that the individual defendants "very likely" had at least constructive notice of their alleged involvement in the activities forming the basis of the plaintiff's claim. *See id.*  Reid argues that is not the case here, and submits documentary evidence to support his position.  [Doc. 43, Exh. 1, pp. 4-7]  Plaintiff responds by submitting documentary evidence of her own, such as a Statement of Position submitted during the administrative proceedings by Defendants' attorney, indicating the document is being submitted on behalf of TLC "and its Administrator Paul Reid."  [Doc. 45, Exh. 1]

In order to resolve this administrative-exhaustion dispute, the Court would be forced to resolve a factual dispute concerning the extent of Reid's notice, constructive or otherwise, that he was being accused of spousal-affiliation-based discrimination.  More importantly, however, the Court would once again have to engage in an "intricate analysis of state law" to determine whether such notice is even necessary to allow a waiver of the administrative-exhaustion requirement. *Lobato* did not explicitly hold that actual or constructive notice is an absolute prerequisite to a court's decision to waive the exhaustion requirement.  The Supreme Court simply pointed out that notice was likely present in that case, while it was engaging in a balancing test the ultimate result of which was waiver of the requirement. *Lobato*, 267 P.3d at 69.  It is not clear to what extent *Lobato* would treat the presence or absence of notice, constructive or otherwise, as a decisive issue in the waiver calculus, and this question therefore is an unresolved question of state law.  It is thus "reasonably possible" that Plaintiff could establish, as a factual or legal matter, that the administrative-exhaustion requirement should be waived in this case.

Again, therefore, this issue cannot be the basis for a refusal to remand the matter to state court. *See Archuleta, supra*, 791 F.Supp.2d at 1072.

### Motion to Supplement Response

Defendants request permission to supplement their response to the motion to remand.  The purpose of the request is to argue that Plaintiff has waived her claim of negligence against Reid, and this claim should not therefore be the basis of any remand.  The Court has not considered the negligence claim in analyzing the remand issue, and supplementation of the response is therefore unnecessary; it will be denied on that basis.

### Motion to Dismiss

Defendant Reid has filed a motion to dismiss all of Plaintiff's state-law claims against him.  However, since the Court has determined no fraudulent joinder occurred and the case must be remanded to state court, the Court lacks jurisdiction to rule on this motion.  *See, e.g., Smith v. Wisconsin Dep't of Agriculture, Trade and Consumer Protection*, 23 F.3d 1134, 1139 n. 10 (7th Cir. 1994) (federal court "has no authority to dismiss a claim over which it never had jurisdiction in the first instance," and should have remanded case to state court rather than dismissing it). Therefore, the Court will decline to rule on the motion.

### Conclusion

Based on the foregoing, the Court will grant Plaintiff's motion to remand, deny Defendants' motion to supplement, and decline to rule on Defendant Reid's motion to dismiss.

Dated this 21st day of August, 2012.

_____

BRUCE D. BLACK
United States District Judge